AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

SOUTHERN _____ **DISTRICT OF** _____ NEW YORK _____

JENNIFER WEE,

**V.**

FOREX CAPITAL MARKETS, LLC and REFCO GROUP LTD,LLC,

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

## 05 CV 7557

### JUDGE CASTEL

TO: (Name and address of defendant)

Forex Capital Markets, LLC
32 Old Slip
New York, New York 10005

Refco Group Ltd, LLC
One World Financial Center
200 Liberty Street
Tower A
New York, New York 10281

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Martha M. McBrayer, Esq.
Morelli Ratner, PC
950 Third Avenue, 11th Floor
New York, New York 10022
(212) 751-9800
(212) 751-0046 Fax

an answer to the complaint which is herewith served upon you, within _____ 30 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

AUG 2 6 2005

**J. MICHAEL McMAHON**

CLERK _____

_____
(BY) DEPUTY CLERK

_____
DATE

JUDGE CASTEL

05 CV

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
============================X
JENNIFER WEE,

      Plaintiff,                                     **COMPLAINT**

      -against-                              Docket No.:

FOREX CAPITAL MARKETS, LLC, and        **PLAINTIFF DEMANDS A**
REFCO GROUP LTD, LLC,                     **TRIAL BY JURY**

      Defendants.

============================X

RECEIVED
AUG 26 2005
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff **JENNIFER WEE**, by her attorneys, **MORELLI RATNER PC**, complaining of the Defendants herein, upon information and belief respectfully alleges as follows:

     1.    Plaintiff **JENNIFER WEE** is a resident of the City, County and State of New York.

     2.    Plaintiff **JENNIFER WEE** is an Asian woman of Chinese descent who was born in the Philippines.

     3.    At all times hereinafter mentioned, Defendant **FOREX CAPITAL MARKETS, LLC** was and is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in the City of New York, State of New York. Defendant **FOREX CAPITAL MARKETS, LLC** has approximately 270 employees.

     4.    Defendant **FOREX CAPITAL MARKETS, LLC** is the largest non-bank futures commission merchant in the world that specializes solely in spot futures commissions. Defendant **FOREX CAPITAL MARKETS, LLC** services over 50,000 retail clients and over 400

institutional clients from more than 80 countries.

5.        At all times hereinafter mentioned, Defendant **REFCO GROUP LTD, LLC** was and is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in the City of New York, State of New York. Defendant **REFCO GROUP LTD, LLC** has approximately 3000 employees.

6.        At all times mentioned herein, Defendant **REFCO GROUP LTD, LLC**. was and is a diversified financial services organization with more than $20 billion in assets.  Defendant **REFCO GROUP LTD, LLC**. services more than 250,000 customer accounts throughout the world via operations in 14 countries.

7.        Commencing approximately January 2003 through the present, Defendant **FOREX CAPITAL MARKETS, LLC** has been partially owned by Defendant **REFCO GROUP LTD, LLC**.  (Hereinafter, both corporate Defendants shall be referred to collectively as Defendants "**FXCM**.")

8.        During the period of on or about February 2, 2003 through on or about August 10, 2004, Plaintiff **JENNIFER WEE** was employed by Defendants **FOREX CAPITAL MARKETS, LLC** and its partner, **REFCO GROUP LTD, LLC**.

9.        Commencing on or about February 2, 2003 through on or about August 27, 2000, Plaintiff **JENNIFER WEE** was employed by Defendants **FOREX CAPITAL MARKETS, LLC** and its partner, **REFCO GROUP LTD, LLC** (hereinafter, collectively referred to as "**FXCM**") as an Operations Specialist in New Accounts.

10.        Commencing approximately September 2003 through on or about August 10, 2004, Plaintiff **JENNIFER WEE** was employed by Defendants **FXCM** as Senior Sales Associate/ Technical Support Specialist in the Sales Department.

11.    Throughout Plaintiff's employment with Defendants **FXCM**, commencing from approximately February 2003 through approximately August 2004, Drew Nim, a native-born Caucasian, was Chief Executive Officer of FXCM, a supervisor, manager and employee of Defendants **FXCM**.

12.    During Plaintiff's employment with **FXCM**, commencing on or about February 2003 through on or about August 10, 2004, Brad Shulman, a native-born Caucasian, was General Sales Manager of the REFCO Sales Department, a manager, supervisor and employee of Defendant **FXCM**. Throughout that time, Plaintiff **JENNIFER WEE** reported to Brad Shulman, the highest ranking supervisor of the REFCO Sales Department.

13.    During Plaintiff's employment with **FXCM**, commencing approximately January 2004 through approximately June 2004, Daniel Perry, a native-born Caucasian, was a Senior Sales Associate for the Asia Desk, an employee of Defendant **FXCM**. Throughout that time, Plaintiff **JENNIFER WEE** reported directly to Daniel Perry, the supervisor for the Asia Desk at FXCM.

14.    During Plaintiff's employment with **FXCM**, commencing on or about February 2003 until approximately January 2004, Andrew Spanton, a native-born Caucasian, was a Senior Sales Associate for the Asia Desk, an employee of Defendant **FXCM**.

15.    During Plaintiff's employment with **FXCM**, commencing approximately February 2003 until her constructive termination on or about August 10, 2004, Caitlin Harris, a native-born Caucasian, was General Sales Manager for FXCM, a manager, supervisor and employee of Defendant **FXCM**. From approximately July 2004 through Plaintiff's constructive termination on or about August 10, 2004, Caitlin Harris was the direct supervisor of the General Sales Manager for the U.S. Desk, Jaymie Illien. Caitlin Harris is married to Chief Executive Officer

Drew Niv.

16.     During Plaintiff's employment with **FXCM**, commencing approximately February 2003 until her constructive termination on or about August 10, 2004, Jaymie Illien, a native-born Caucasian, was General Sales Manager for the U.S. Desk at FXCM, a manager, supervisor and employee of Defendant **FXCM**.  From approximately July 2004 through Plaintiff's constructive termination on or about August 10, 2004, Mr. Illien was the highest ranking supervisor for the U.S. Desk., and Plaintiff's immediate supervisor in the Sales Department.  During that time, Jaymie Illien reported directly to Caitlin Harris.

17.     During Plaintiff's employment with **FXCM**, commencing approximately February 2003 until Plaintiff's constructive termination on or about August 10, 2004, Siju Daniel, a native-born Eastern Indian, was a Sales Manager for the U.S. Desk at FXCM, a manager, supervisor and employee of Defendant **FXCM**.  From approximately January 2004 through Plaintiff's constructive termination on or about August 10, 2004, Mr. Daniel was Plaintiff's Supervisor in the Sales Department when Jaymie Illien was not present.  Siju Daniel also reported directly to Caitlin Harris.

18.     During Plaintiff's employment with **FXCM**, commencing approximately February 2003 until approximately August 2003, Ashley Hutto, a native-born Caucasian, was a Sales Associate for the U.S. Desk at FXCM, an employee of Defendant **FXCM**.  In approximately August 2003, Ashley Hutto was promoted to Sales Manager for the U.S. Desk at FXCM.  From approximately August 2003 until her constructive termination on or about August 10, 2004, Ashley Hutto was Sales Manager for the U.S. Desk at FXCM, a manager, supervisor and employee of Defendant **FXCM**. From approximately November 2003 until approximately mid-January 2004, Ashley Hutto was Plaintiff's direct Supervisor in the Asia Desk's Sales

Department.

19.     At all times material to this Complaint, the individual officers, directors, supervisors, managers, employees and/or agents mentioned herein, acted within the scope of their duties as officers, directors, supervisors, managers, employees and/or agents of Defendant **FXCM**.

20.     Jurisdiction of the subject matter of this action is established in this Court under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 of the United States Code, Section 2000-e(f)(3). This is the proper venue for this action under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 of the United States Code, Section 2000 et seq., in that unlawful acts alleged herein were committed within this Court's jurisdiction.

21.     On or about December 9, 2004, Plaintiff **JENNIFER WEE** filed a discrimination claim with the New York State Division of Human Rights and the EEOC.

22.     On or about June 28, 2005, the EEOC issued a Notice of Right to Sue on Plaintiff's behalf.


## GENERAL ALLEGATIONS OF GENDER, RACE AND NATIONAL ORIGIN DISCRIMINATION

23.     The allegations set forth above and below are incorporated by reference as if fully set forth herein.

24.     Throughout her employment at Defendant **FXCM**, Plaintiff **JENNIFER WEE** was treated differently than male employees at the company.

25.     This disparate treatment included her subjection to *quid pro quo* sexual harassment, a sexually hostile work environment, and gender discrimination, by directors,

officers, supervisors, managers, employees and/or agents of Defendant **FXCM**.

26.    From on or about February 2003 through her constructive termination on or about August 10, 2004, Plaintiff was treated by Drew Niv, Brad Shulman, Daniel Perry, Jaymie Illien, Ashley Hutto  and other male executives, officers, supervisors, and managers, in a demeaning manner, and was treated differently than male employees in identical and/or similar employment circumstances.

27.    This disparate treatment included different standards of conduct, unequal pay, unequal work assignments, unequal benefits, unequal opportunities, unequal promotion, and unequal disciplinary measures directed toward Plaintiff and other female employees as opposed to male employees similarly employed by and situated at Defendant **FXCM**.

28.    Within Defendant **FXCM** there was and continues to be a permissive and encouraging environment for gender discrimination and sexual harassment among supervisors, managers and employees of the company.

29.    Throughout her employment at Defendants **FXCM**, Plaintiff **JENNIFER WEE** was also treated differently than Caucasian and/or native-born employees at the company.

30.    This disparate treatment included harassment and discrimination by directors, officers, supervisors, managers, employees and/or agents of Defendants **FXCM**.

31.    This disparate treatment included different standards of conduct, unequal pay, unequal work assignments, unequal benefits, unequal opportunities, unequal promotion, and unequal disciplinary measures directed toward Plaintiff and other Asian and/or foreign-born employees as opposed to Caucasian and/or native-born American employees similarly employed by and situated at Defendants **FXCM**.

32.    Within Defendants **FXCM** there was and continues to be a permissive and

encouraging environment for race and national origin discrimination among supervisors,
managers and employees of the company.

33.     From on or about February 2003 through her constructive termination on or
about August 10, 2004, Plaintiff was treated by Drew Niv, Brad Shulman, Daniel Perry, Caitlin
Harris, Jaymie Illien, Ashley Hutto and other Caucasian, native-born executives, officers,
supervisors, and managers, in a demeaning manner, and was treated differently than **FXCM**
Caucasian and/or American-born employees in identical and/or similar employment
circumstances.

### SPECIFIC ALLEGATIONS OF GENDER, RACE AND NATIONAL ORIGIN DISCRIMINATION

34.     Throughout Plaintiff's employment from on or about February 2, 2003 through
her constructive termination on or about August 10, 2004, senior level management at
Defendants **FXCM** was exclusively Caucasian and native-born American.

35.     Since its inception, Defendants **FXCM** have never promoted an Asian employee
to a Manager/Supervisor position in its Sales Department.

36.     Throughout her employment from approximately February 2003 through
August 10, 2004, Plaintiff **JENNIFER WEE** was the most productive employee on Defendants
**FXCM**'s Sales Desk, performing everything from operations, to sales, to technical support.
Notwithstanding the foregoing, Plaintiff **JENNIFER WEE** never received a promotion nor a
merit raise during her employment at Defendants **FXCM**.

37.     From approximately February 2003 through approximately June 2004, Plaintiff
**JENNIFER WEE** worked on the Asia Desk.

38.      From approximately February 2003 through approximately August 2003, Plaintiff
**JENNIFER WEE** worked in the Asia Operations Department.

39.      Commencing approximately September 2003, Plaintiff **JENNIFER WEE**
performed full-time duties for the Asia Sales Department.  In approximately October 2003,
Plaintiff **JENNIFER WEE** officially switched to the Asia Sales Desk where she remained through
approximately June 2004.

40.      From approximately July 2004 until her constructive termination on August 10,
2004, Plaintiff **JENNIFER WEE** worked on the U.S. Sales Desk.

41.      In approximately June 2003, Operations Supervisor Janelle Lester gave Plaintiff
**JENNIFER WEE** an excellent six-month review and awarded her a raise.  The standard raise at
that time was $2500.  However, the raise was never reflected in Plaintiff's salary, which remained
at $30,000.

42.      During approximately Summer 2003, Plaintiff **JENNIFER WEE** repeatedly
informed Sales Supervisor Jaymie Illien and Operations Supervisor Janelle Lester about
Defendants **FXCM**'s failure to raise her salary.  Nothing was done.

43.      Commencing approximately August 2003, Plaintiff **JENNIFER WEE** performed
full-time duties for Defendants **FXCM**'s Sales Department.

44.      In approximately October 2003, Plaintiff **JENNIFER WEE** was officially
designated as a member of Defendants **FXCM**'s Sales Department.  The starting annual base
salary for employees in the Sales Department, including new hires with neither prior training nor
experience, was $35,000.  However, Plaintiff **JENNIFER WEE**'s salary remained $30,000, the
amount she was earning before the "raise" she was awarded in June 2003 but had not received.

45.      Commencing approximately October 2003, Plaintiff **JENNIFER WEE** repeatedly

complained to Sales Manager David Waring, Sales Manager Brendan Callan and Sales Manager Jaymie Illien concerning the discrepancy between her salary, still $30,000, and the $35,000 that new hires received in **FXCM**'s Sales Department. Nothing was done.

46.     Instead, from approximately September 2003 through December 2003, Defendants **FXCM** continued to pay Plaintiff **JENNIFER WEE** a $30,000 salary, approximately two-and-a-half months after her official transfer to the Sales Department, and approximately four-and-a-half months after she began performing full-time duties in Sales. Plaintiff was never paid the wage differential for that period of time.

47.     In approximately December 2003, Plaintiff **JENNIFER WEE** complained to Chief Executive Officer Drew Niv concerning the discrepancy in the raise she was awarded and the lower salary she continued to receive. Chief Executive Officer Drew Niv promised to pay Plaintiff the differential along with her Christmas bonus in December 2003. In December 2003 Plaintiff **JENNIFER WEE** received $2000, reflecting approximately the $1250 salary differential from her June 2003 raise to $32,500 and a $750 Christmas bonus.

48.     Although Plaintiff **JENNIFER WEE** outperformed other members of the Asia Sales Desk in 2003, her December 2003 Christmas bonus was significantly less than those of her male, Caucasian, native-born peers. For instance, Sales Associate Andrew Spanton (who started approximately five-six months before Plaintiff) received a $50,000 Christmas bonus.

49.     In approximately late December 2003 or early January 2004, Plaintiff **JENNIFER WEE**'s salary was finally increased to $35,000.

50.     From approximately September 2003 until approximately the end of June 2004, Plaintiff **JENNIFER WEE** served on the Asia Sales Desk night shift from 4:00 p.m. until midnight. However, Plaintiff was often required to arrive earlier than 4:00 p.m. and work past

midnight.

51.   Commencing approximately April 2004, on approximately three-four occasions, Plaintiff **JENNIFER WEE** requested a transfer from the Asia Desk, where employees had to work the night shift, to the U.S. Sales Desk, where employees enjoyed a set 8:00 a.m.-6:00 p.m. shift. Defendants **FXCM** had an unwritten policy limiting the term female employees were assigned to work the night shift to six months or less.  However, Plaintiff's Supervisors, Daniel Perry and Brad Shulman, repeatedly denied her requests, stating that **FXCM** would need two people to fill Plaintiff's shoes.

52.   From approximately September 2003 through approximately June 2004, Plaintiff **JENNIFER WEE** was the main liaison on the Asia Desk between Defendants **FXCM's** New York and Hong Kong offices.  Of the approximately 15-20 employees on the Asia Sales Desk, Plaintiff **JENNIFER WEE** was the only female, except for a period of approximately two to three months when there was one other female Sales Associate.

53.   From approximately September 2003 through approximately June 2004, of the approximately 15-20 employees on Defendants **FXCM's** Asia Sales Desk, Plaintiff **JENNIFER WEE** was the only Filipino.

54.   During that same period from approximately September 2003 through approximately June 2004, only roughly three-four out of 15-20 employees on Defendants **FXCM's** Asia Sales Desk, including Plaintiff **JENNIFER WEE**, were born outside the United States.

55.   In approximately July 2004, Plaintiff's ongoing request to transfer to Defendants **FXCM's** U.S. Desk was finally granted approximately three months after her initial inquiry.

56.   From approximately July 2004 until her constructive termination on August 10,

2004, Plaintiff **JENNIFER WEE** worked on the U.S. Sales Desk. Of the approximately 35-40 employees working on the U.S. Sales Desk, only approximately five, including Plaintiff, were women.

57.     From approximately July 2004 until one week prior to her constructive termination on August 10, 2004, of the approximately 35-40 employees working on the U.S. Sales Desk, Plaintiff **JENNIFER WEE** was the only Filipino.

58.     From approximately July 2004 through August 10, 2004, only roughly five of the 35-40 employees on the U.S. Sales Desk, including Plaintiff **JENNIFER WEE**, were born outside the United States.

59.     As a consequence of this ongoing gender, race and national origin discrimination, as well as the sexual harassment, sexually hostile work environment and retaliation set forth below, Plaintiff **JENNIFER WEE**'s employment was constructively terminated on August 10, 2004.

60.     One week later, on August 17, 2004, Defendants **FXCM**'s Asia Desk Sales Manager Ashley Hutto sent a memo entitled "Staff Changes & Turnover" to the entire Asia Sales Desk confirming that Plaintiff **JENNIFER WEE**'s departure from Defendants **FXCM** was involuntary. In so doing, Sales Manager Ashley Hutto announced that Plaintiff **JENNIFER WEE** and three other employees were terminated for cause.

61.     Three of the four employees identified in Sales Manager Ashley Hutto's memo were racial minorities: Plaintiff **JENNIFER WEE** and Arthur Yu are Asian; Daniel Jean Baptiste is of African descent.

62.     As a consequence of Defendants **FXCM**'s discriminatory conduct, Plaintiff **JENNIFER WEE** has suffered and continues to suffer severe emotional distress, including

depression, anxiety, nightmares, sleep disturbance, crying jags, weight loss, and upset. Moreover, since her termination, Plaintiff has suffered significant economic loss, including but not limited to loss of income and benefits.

63.     The allegations set forth above and below are incorporated by reference as if fully set forth herein.

## ALLEGATIONS OF *QUID PRO QUO* SEXUAL HARASSMENT AND A SEXUALLY HOSTILE WORK ENVIRONMENT

64.     The allegations set forth above and below are incorporated by reference as if fully set forth herein.

65.     Throughout her employment at Defendants **FXCM**, Plaintiff **JENNIFER WEE** was subjected to *quid pro quo* sexual harassment and a sexually hostile work environment, perpetrated by directors, officers, supervisors, managers, employees and/or agents of Defendants **FXCM**.

66.     Within Defendants **FXCM** there was and continues to be a permissive and encouraging environment for sexual harassment among supervisors, managers and employees of the company.

67.     During the period from approximately February 2003 through approximately August 2004, extending prior to and subsequent to those dates, Defendants **FXCM**, its employees, managers, directors, officers and agents, harassed and intimidated Plaintiff, and created and maintained a sexually hostile work environment through explicit, rampant, pervasive and continued sex discrimination and sexual harassment against Plaintiff and other members of the protected class to which Plaintiff **JENNIFER WEE** belongs.

68.    During the period from approximately April 2003 until his resignation in approximately January 2004, approximately daily, Plaintiff **JENNIFER WEE** was subjected to inappropriate sexual comments by her co-worker, Andrew Spanton.  Furthermore, Andrew Spanton's loud, vulgar comments were made in the presence of Asia Sales Desk Supervisor Daniel Perry and Technical Support Supervisor Evan Milazzo, both Caucasian, native-born Americans.  However, nothing was done to discourage or stop Andrew Spanton's harassment.

69.    Throughout Plaintiff's employment from approximately February 2003 until his resignation in approximately January 2004, approximately daily, Andrew Spanton repeatedly made sexual comments concerning Plaintiff **JENNIFER WEE**'s physical appearance, such as: "Oh, that shirt looks good on you."

70.    Throughout Plaintiff's employment from approximately February 2003 until his resignation in approximately January 2004, approximately daily, Andrew Spanton repeatedly suggested that he would let Plaintiff live with him rent-free in exchange for her cooking for him and massaging him.  Plaintiff **JENNIFER WEE** repeatedly declined Andrew Spanton's advances, letting him no that she was not interested.

71.    From approximately February 2003 until his resignation in approximately January 2004, Andrew Spanton repeatedly suggested to Plaintiff **JENNIFER WEE** that they should get married.

72.    Throughout her employment from approximately February 2003 until his resignation in approximately January 2004, approximately two to three times per week, Andrew Spanton repeatedly made lewd comments to Plaintiff **JENNIFER WEE** and in her presence concerning his sexual preference for Asian women, including comments suggesting that Asian women "are freaks in bed."  Andrew Spanton's comments made Plaintiff **JENNIFER WEE**

extremely upset and she repeatedly told him to leave me alone.  However, Andrew Spanton did

not stop.

73.    In approximately April 2003 on at least approximately two occasions, Plaintiff

**JENNIFER WEE** saw Andrew Spanton in the office surfing the internet for websites promoting

anonymous sexual encounters.  On these occasions, Andrew Spanton informed Plaintiff

**JENNIFER WEE** and a male co-worker, Som Kharazmi, that he was soliciting a sexual

encounter with a stranger, and that he preferred Asian women.  Plaintiff was disgusted.

74.    Throughout Plaintiff's employment commencing approximately February 2003

until his resignation in approximately January 2004, approximately daily, Andrew Spanton

insisted on making sexually graphic comments to Plaintiff **JENNIFER WEE**, including inquiries

such as: "are you still a virgin?" and "do you masturbate?"  Andrew Spanton laughed loudly at

these sickening comments.  Unfortunately, Plaintiff's male co-workers and supervisors did

nothing to discourage or stop Andrew Spanton's behavior.  Plaintiff felt ashamed and trapped.

75.    On or about October 2003, in the presence of her co-workers and supervisors,

including Som Kharazmi and Daniel Perry, Andrew Spanton gave Plaintiff **JENNIFER WEE** a

device that appeared to be a vibrator and said, guffawing loudly: "You can use this to

masturbate."  Plaintiff **JENNIFER WEE** was deeply humiliated.

76.    Throughout Plaintiff's employment from approximately February 2003 until his

resignation in approximately January 2004, approximately weekly, Andrew Spanton approached

Plaintiff **JENNIFER WEE** where she was working, sat on her desk, and asked her personal

questions concerning my weekend plans, who she was seeing, and whether she was going on any

dates that weekend.  On numerous occasions, Andrew Spanton suggested that Plaintiff

**JENNIFER WEE** accompany him and "the boys" for drinks after work.  I repeatedly declined his

invitations.

77.     On numerous occasions from approximately February 2003 until his resignation in approximately January 2004, Andrew Spanton suggested to Plaintiff **JENNIFER WEE** that she accompany him and "the boys" for drinks after work.  Plaintiff **JENNIFER WEE** repeatedly declined Andrew Spanton's invitations.

78.     From approximately February 2003 until his resignation in approximately January 2004, approximately weekly, Andrew Spanton made inappropriate comments in Plaintiff **JENNIFER WEE**'s presence concerning the physical appearance of other women in the office, such as: "She's so ugly," "she's fat," and "she doesn't look good today."  Plaintiff **JENNIFER WEE** did her best to ignore his remarks.

79.     From approximately February 2003 until his resignation in approximately January 2004 Andrew Spanton repeatedly remarked to Plaintiff **JENNIFER WEE** to the effect:  "Don't eat too much, you want to stay skinny."  Plaintiff would respond that her weight was none of his business.

80.     On or about August 2003, Sales Associate Ashley Hutto remarked loudly to Plaintiff **JENNIFER WEE** in front of four or five other male co-workers: "Jen Wee, I hear you are single again" and gave a suggestive grin to the other men.  Plaintiff was embarrassed, and left the room.

81.     On or about August 2003, Plaintiff **JENNIFER WEE** was sexually assaulted by Sales Associate Ashley Hutto at a company party.  Ashley Hutto repeatedly grabbed Plaintiff **JENNIFER WEE** inappropriately and made sexually lewd comments to her.

82.     During the course of the evening in approximately August 2003, Sales Associate Ashley Hutto groped Plaintiff **JENNIFER WEE**'s buttocks approximately three-four times,

repeatedly rubbed his hands all over Plaintiff's back and arms, and stuck his hand up her shirt and attempted to grab her breasts.

83.     During the course of a company party on or about August 2003, Sales Associate Ashley Hutto commented to Sales Manager Evan Milazzo about Plaintiff **JENNIFER WEE**: "I would love to fuck that little ass."

84.     On or about August 2003, as Ashley Hutto's lewd comments and pawing continued, Plaintiff **JENNIFER WEE** asked her co-worker Siju Daniel to accompany her outside so she could escape Andrew Hutto's unsolicited and unwelcome advances.  Nevertheless, Ashley Hutto found Plaintiff and Mr. Daniel outside, where he again attempted to fondle Plaintiff, and then kneeled down and said: "Jen Wee, marry me.  I'll be your bitch."  When Siju Daniel pulled Ashley Hutto away, Mr. Hutto called him "a cock-blocking nigger."  Plaintiff was disgusted.

85.     The following evening in approximately August 2003, Plaintiff's weekend work shift commenced at 5:00 p.m.  During the course of that shift, Plaintiff **JENNIFER WEE** received approximately two to three calls from Ashley Hutto's cell phone.  When Plaintiff answered the calls, there was a hang-up on the other line.

86.     Unfortunately, despite my complaints concerning his sexual assaults and sexual harassment as set forth above and below, Andrew Hutto's harassment continued.

87.     On approximately two-three occasions during approximately October or November 2003, Plaintiff **JENNIFER WEE** overheard Andrew Spanton make lewd comments concerning Intern Michelle Elsamak's cleavage and the size of her breasts.  Plaintiff was repulsed.

88.     In approximately October 2003, Andrew Spanton moved desks so that he sat directly next to Plaintiff **JENNIFER WEE**.  On repeated occasions commencing at that time, Plaintiff **JENNIFER WEE** asked her Supervisor, Daniel Perry, for permission to move desks so

she would not have to sit next to Andrew Spanton.  Unfortunately, Plaintiff's request was never

granted.  Since there was no official seat assignment, Plaintiff **JENNIFER WEE** did her best to

switch seats away from Andrew Spanton when he sat next to her.  Regardless, Andrew Spanton's

comments continued unabated.

89.    Throughout Plaintiff's employment, from approximately October 2003 through

her constructive termination in approximately August 2004, Sales Manager/Supervisor Jaymie

Illien, along with Ashley Hutto, repeatedly commented loudly that Defendants **FXCM** needed to

hire "more good-looking girls."  Mr. Illien, whose responsibilities included hiring, repeatedly

commented after interviewing various female applicants that he would not hire the applicant

because "she's not good-looking enough."

90.     In approximately July 2004, following his interview of a female applicant, Sales

Manager/Supervisor Jaymie Illien commented: "I can't make a decision if we should hire her...

she's cute."  The applicant was then hired.  However, Training Manager Matthew Ketcham

subsequently terminated the woman's employment at the end of her initial two-week training

period because she was so unqualified.

91.    Throughout Plaintiff's employment at Defendant **FXCM**'s U.S. Desk from

approximately October 2003 through her constructive termination in August 2004, Plaintiff

**JENNIFER WEE** sat next to Sales Manager/Supervisor Jaymie Illien and overheard him conduct

telephone interviews of female applicants.  Jaymie Illien persistently asked inappropriate

questions, such as: "do you have a boyfriend?" and "how long have you guys been dating?"

Jaymie Illien also flagrantly flirted with the female applicants.

92.    Throughout Plaintiff's employment at Defendant **FXCM**'s U.S. Desk from

approximately October 2003 through her constructive termination in August 2004, Sales

Manager/Supervisor Jaymie Illien repeatedly and explicitly bragged to Plaintiff **JENNIFER WEE** and other female co-workers about the women he slept with. Plaintiff was disgusted.

93.    Throughout Plaintiff's employment at Defendant **FXCM**'s U.S. Desk from approximately October 2003 through her constructive termination in August 2004, Sales Manager/Supervisor Jaymie Illien asked Plaintiff **JENNIFER WEE** provocative questions concerning her Asian female co-worker, Jing Zhao, such as: "does Jing have a boyfriend?' and "what kind of guy does Jing like?"

94.    In approximately November or early December 2003, Plaintiff **JENNIFER WEE** accompanied her co-workers to a bar for an after-work cocktail. At the bar, Sales Manager/Supervisor Jaymie Illien commented lustily about Plaintiff's body: "Why aren't you a swimsuit model?" Plaintiff did not respond to Mr. Illien.

95.    In approximately December 2003, following Defendant **FXCM**'s Christmas party, Sales Manager/Supervisor Jaymie Illien boasted in Plaintiff **JENNIFER WEE**'s presence at least two times about "hooking up" with Jing Zhao, even though that had never occurred. Plaintiff refused to respond.

96.    In approximately late December 2003 or early January 2004, Sales Manager/ Supervisor Jaymie Illien showed Plaintiff **JENNIFER WEE** in the office a photograph of a scantily clad woman lying in his bed.

97.    In approximately late December 2003, Defendants **FXCM** sent the entire Asia Desk out for drinks after work at Puck's Fair. During the course of this company outing, in the presence of Sales Manager Ashley Hutto, Sales Manager Evan Milazzo, and approximately five male co-workers, Senior Sales Associate Andrew Spanton grabbed Plaintiff **JENNIFER WEE**, pulled her by her hair, and attempted to kiss her. Disgusted and alarmed, Plaintiff covered her

face and pulled away.

98.    Later that evening at the company outing at Puck's Fair in approximately late December 2003, Senior Sales Associate Andrew Spanton followed Plaintiff **JENNIFER WEE** into the women's bathroom and again attempted to grab her.  Plaintiff was frightened to find herself alone in the women's bathroom with Mr. Spanton.  In order to escape Senior Sales Associate Andrew Spanton's unwanted and unsolicited sexual advances, Plaintiff **JENNIFER WEE** ran into a stall, slammed the door shut, locked the door, and pleaded with Mr. Spanton to leave.  Senior Sales Associate Andrew Spanton responded sinisterly: "Don't be shy.  You can use the bathroom.  I'll be here waiting."  Plaintiff **JENNIFER WEE** felt violated, frightened, humiliated and shocked.  Fortunately, Leena Ahkhtar, the only other woman who then worked on Plaintiff's shift, walked into the bathroom, and Andrew Spanton left.

99.    In approximately December 2003, **FXCM**'s Hong Kong Dealing Desk Manager Paul Su photographed female employees using a camera featuring a night vision component at Defendant **FXCM**'s company Christmas party.

100.    In approximately January 2004,  Hong Kong Dealing Desk Manager Paul Su forwarded to  U.S. Desk General Sales Manager Jaymie Illien a photograph taken at Defendant **FXCM**'s December 2003 company Christmas party of Plaintiff's Chinese female foreign-born co-worker, Jing Zhao.  Because the photograph was taken with a camera that had a night vision feature, viewers could see through Ms. Zhao's dress, exposing her nipples and panties.

101.    Commencing approximately January 2004, **FXCM**'s U.S. Desk General Sales Manager Jaymie Illien distributed **FXCM**'s Hong Kong Dealing Desk Manager Paul Su's revealing photograph of Ms. Zhao to most of the male employees in the office using the company e-mail system.  Moreover,  U.S. Desk General Sales Manager Jaymie Illien loudly laughed about

the photograph in Ms. Zhao's presence.  The entire incident was upsetting and disturbing to Plaintiff and her female co-workers at **FXCM**.  Ms. Zhao subsequently quit her employment.

102.    In approximately April or May 2004, U.S. Desk General Sales Manager Jaymie Illien came online on MSN using a webcam when Plaintiff **JENNIFER WEE** was also on MSN. Throughout Plaintiff's employment at **FXCM**, office employees used MSN Instant Messenger to communicate with co-workers in the office about work.  After asking Plaintiff some personal questions concerning her boyfriend, including how long they had been together, U.S. Desk General Sales Manager Jaymie Illien suddenly, without warning, displayed his penis to Plaintiff via the webcam.  Plaintiff was stunned.

103.    In approximately April or May 2004, Defendant **FXCM**'s Asia Desk Supervisor Daniel Perry also witnessed U.S. Desk General Sales Manager Jaymie Illien expose his penis on the webcam.  When Plaintiff **JENNIFER WEE** questioned Asia Desk Supervisor Daniel Perry what the webcam was showing, he became completely disconcerted and hesitantly responded that it was one of U.S. Desk General Sales Manager Jaymie Illien's nipples.

104.    From approximately January 2004 to June 2004, while Daniel Perry was Supervisor of the Asia Desk, **FXCM** clients repeatedly called the Asia Desk and specifically asked to speak to "a girl."  Because Plaintiff **JENNIFER WEE** was the only female in Sales during the entire shift, Asia Desk Supervisor Daniel Perry forced Plaintiff to take the calls.  On repeated occasions Plaintiff **JENNIFER WEE** expressed discomfort to Asia Desk Supervisor Daniel Perry concerning the circumstances.  Typically, Daniel Perry responded to the effect: "You're a girl, just flirt with the client a little and we can close the account."

105.    As a consequence of this ongoing gender discrimination, sexual harassment, and sexually hostile work environment, Plaintiff **JENNIFER WEE** was constructively terminated on

August 10, 2004.

106.    In approximately October 2004, Ashley Hutto was once again promoted by Defendants **FXCM**, this time to General Sales Manager of RefcoFX.  Shortly thereafter, General Sales Manager Ashley Hutto sent Plaintiff **JENNIFER WEE** the following text message: "Damage already done.  BUT I still love you!"  Plaintiff was frightened.

107.    As a consequence of Defendants **FXCM**'s sexual harassment and sexually harassing work environment, Plaintiff **JENNIFER WEE** has suffered and continues to suffer severe emotional distress, including depression, anxiety, nightmares, sleep disturbance, crying jags, weight loss, and upset.  Moreover, since her termination, Plaintiff has suffered significant economic loss, including but not limited to loss of income and benefits.

108.    The allegations set forth below are incorporated by reference as if fully set forth herein.

## SPECIFIC ALLEGATIONS OF RETALIATION

109.    The allegations set forth above are incorporated by reference as if fully set forth herein.

110.    Throughout her employment at Defendants **FXCM**, Plaintiff **JENNIFER WEE** received positive performance evaluations, including from Operations General Manage Jannelle Lester, General Sales Manager Jaymie Illien and Sales Manager Daniel Perry.  On numerous occasions, Plaintiff **JENNIFER WEE** was praised by her Supervisors for her professional ethics and the excellent feedback **FXCM** received from its clients concerning her professionalism, responsiveness and demeanor.

111.    During the course of Plaintiff's employment at Defendant **FXCM**, Plaintiff

**JENNIFER WEE** trained more than 20 employees in operations, sales and technical support. Moreover, at the time of her constructive termination, Plaintiff **JENNIFER WEE** was supervising three employees.

112.    On or about August 2003, approximately one week after she was assaulted by her then co-worker Ashley Hutto, Plaintiff **JENNIFER WEE** complained to her Supervisor, Operations General Manager Janelle Lester, regarding U.S. Desk Sales Associate Ashley Hutto's sexual harassment and the sexually hostile work environment.  Although Operations General Manager Janelle Lester appeared to commiserate and indicated she would do something to redress the situation, nothing was done.

113.    On or about August 2003,  within two weeks of Ashley Hutto's sexual assault of Plaintiff and approximately one week after Plaintiff's sexual harassment/hostile work environment complaint to Operations General Manager Janelle Lester, Ashley Hutto was promoted from Sales Associate to Sales Manager of the U.S. Desk.  Consequently, Ashley Hutto became Plaintiff **JENNIFER WEE**'s indirect supervisor.

114.    In direct retaliation for her sexual harassment complaint, from approximately August 2003 through her constructive termination in August 2004, newly-appointed U.S. Desk Sales Manager Ashley Hutto subjected Plaintiff **JENNIFER WEE** to heightened scrutiny, repeatedly held "meetings" where he pulled Plaintiff aside and berated her purported "incompetence" or "laziness," and generally harassed Plaintiff.  U.S. Desk Sales Manager Ashley Hutto's conduct was in direct retaliation for Plaintiff **JENNIFER WEE**'s refusal to comply with his sexual advances, and for her complaint to Operations General Manager Janelle Lester concerning his sexual harassment.

115.    Commencing approximately August 2003 until her constructive termination in

August 2004, in direct retaliation for her complaints of sexual harassment and a sexually hostile

work environment, and in direct retaliation for her refusal to submit to the sexual advances of

her co-workers and supervisors, Plaintiff **JENNIFER WEE** was treated in an increasingly hostile

manner by Defendants **FXCM**. For instance, Plaintiff **JENNIFER WEE** was held accountable

for mistakes made by others, and only spoken to by her male Managers when absolutely

necessary.

116.    In approximately July 2004, Plaintiff **JENNIFER WEE** transferred to **FXCM**'s

U.S. Desk because of the ongoing sexually hostile work environment she was subjected to at

**FXCM**'s Asia Desk, and the retaliation she was undergoing. However, Plaintiff **JENNIFER**

**WEE**'s reception by her Supervisors and co-workers at the U.S. Desk, including that of U.S. Desk

General Sales Manager Jaymie Illien, continued to be hostile. For instance, U.S. Desk General

Sales Manager Jaymie Illien refused to acknowledge Plaintiff's hard work, generally ignored her,

and did not speak to Plaintiff unless absolutely necessary.

117.    On or about June 29, 2004, **FXCM** General Sales Manager Brad Shulman placed

Plaintiff **JENNIFER WEE** on one month's probation after wrongly accusing her of cheating on

tasks she had completed the previous day.

118.    On or about June 29, 2004, **FXCM**'s General Sales Manager Brad Shulman forced

Plaintiff **JENNIFER WEE** to send an e-mail out to the entire Refco Sales Desk falsely confessing

responsibility for the alleged wrongdoing. In so doing, General Sales Manager Brad Shulman

threatened Plaintiff **JENNIFER WEE** that if she did not send the e-mail she would be

terminated by the end of the day. Plaintiff **JENNIFER WEE** was extremely humiliated and

upset, but complied with his directive.

119.    In approximately July 2004, **FXCM** Compliance Officer Esmeralda Lopez

informed Plaintiff **JENNIFER WEE** that General Sales Manager Caitlin Harris was planning to

renege on **FXCM**'s promises to have her visa renewed and continue her employment. Instead,

Plaintiff **JENNIFER WEE** was informed that Defendants **FXCM** planned to terminate her after

her visa's expiration due date in September 2004.

120.    On or about late July or early August 2004, Plaintiff **JENNIFER WEE** reported to

work, even though she did not feel well, since **FXCM**'s General Sales Manager Caitlin Harris had

reprimanded her for taking a sick day the preceding Friday. Despite the fact that she became ill,

General Sales Manager Jayme Illiam refused Plaintiff **JENNIFER WEE**'s request for permission to

go to the bathroom. Plaintiff was forced to vomit in a cup at her desk. When her lunch break

arrived, **FXCM**'s General Sales Manager Jaymie Illiam refused to allow Plaintiff to leave the desk

since she had been out sick the preceding Friday.

121.    As a consequence of this ongoing discrimination, harassment, hostile work

environment, and  retaliation, Plaintiff **JENNIFER WEE**'s employment was constructively

terminated on August 10, 2004.

122.    One week later, on August 17, 2004, **FXCM** Sales Manager Ashley Hutto sent a

memo entitled "Staff Changes & Turnover" to the entire Asia Sales Desk confirming that her

departure from **FXCM** was involuntary. In so doing, however, Sales Manager Ashley Hutto

damaged Plaintiff's reputation at the company by declaring that Plaintiff's termination was due to

her incompetence and insubordination rather than in retaliation for her complaints of sexual

harassment and a sexually hostile work environment, including that perpetrated by Mr. Hutto.

**FXCM** Sales Manager Ashley Hutto's memo provided in pertinent part:

> Recently many of you may have noticed several employees
> have disappeared.  While natural turnover is to be expected

in a young company several recent departures need to be highlighted for very different reasons.

While you may notice 3 of these people were allowed to leave graciously and plenty of advance notice was given, each was in the process of being let go when replacements could be found.

... 2. Jennifer Wee: general laziness/chronic complaining and a sense of "me first I've been here longes!" (*sic*) entitlement.

... **I highlight their cases because I want you to understand that all management (me and my own bosses) recognizes the hard work and dedication that you put in and won't tolerate people sharing in our compensation pool that don't match our efforts. Nothing goes unnoticed**....

(*emphasis provided.*)

123.    Following Plaintiff **JENNIFER WEE**'s constructive termination in August 2004, **FXCM**'s U.S. Desk General Sales Manager Jaymie Illien forwarded Sales Manager Ashley Hutton's "Staff Changes & Turnover" e-mail to the entire Sales Desk.

124.    Plaintiff **JENNIFER WEE**'s employment was constructively terminated in direct retaliation for her complaints concerning the ongoing and pervasive sexual harassment, sexually hostile work environment, discrimination and retaliation that was directed toward her and permeated Defendants **FXCM** throughout Plaintiff's employment.

125.    As a consequence of Defendants **FXCM**'s conduct, Plaintiff **JENNIFER WEE** has suffered and continues to suffer severe emotional distress, including depression, anxiety, nightmares, sleep disturbance, crying jags, weight loss, and upset, and physical injury including an ulcer.  Moreover, since her termination, Plaintiff has suffered significant economic loss, including but not limited to loss of income and benefits.

## AS AND FOR A FIRST CAUSE OF ACTION
## TITLE VII -GENDER DISCRIMINATION

126.    Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation contained in paragraphs 1 through 108 with the same force and effect as though more fully set forth at length herein.

127.    The aforesaid acts of intentional gender discrimination by Defendants **FXCM**, its officers, directors, supervisors, managers, and/or employees, violated Plaintiff **JENNIFER WEE**'s rights as provided under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 of the United States Code, Section 2000e-2(a).

128.    As a consequence of Defendants' gender discrimination while Plaintiff was an employee of Defendants **FXCM**, Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation.  In addition, Plaintiff  incurred monetary loss as she was subjected to adverse employment actions, including disparate pay, culminating in her constructive termination.

129.    As a consequence of the foregoing misconduct of Defendants **FXCM**,  Plaintiff **JENNIFER WEE** has sustained damage in the sum of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS compensatory damages, THREE HUNDRED THOUSAND ($300,000.00) DOLLARS punitive damages, plus economic damages and attorneys fees.


## AS AND FOR A SECOND CAUSE OF ACTION
## NYSHRL - GENDER DISCRIMINATION

130.    Plaintiff **JENNIFER WEE**  repeats and realleges each and every allegation contained in paragraphs 1 through 108 inclusive, with the same force and effect as though more fully set forth at length herein.

134.     The aforesaid acts of intentional gender discrimination by Defendants **FXCM**, its

officers, directors, supervisors, managers and/or employees, violated Plaintiff **JENNIFER WEE**'s

rights as provided under New York State Human Rights Law - Executive Law Section 290 <u>et.</u>

<u>seq.</u>

135.     As a consequence of Defendants **FXCM**'s gender discrimination while Plaintiff

was an employee of Defendants **FXCM**, Plaintiff sustained conscious pain and suffering, physical

injury, great mental distress, shock, fright and humiliation.  In addition, Plaintiff incurred

monetary loss as she was subjected to adverse employment actions, including disparate pay,

culminating in her constructive termination.

136.     As a consequence of the foregoing misconduct of Defendants **FXCM**, Plaintiff

**JENNIFER WEE** has been damaged  in the sum of TWENTY-FIVE MILLION

($25,000,000.00) DOLLARS.


### AS AND FOR A THIRD CAUSE OF ACTION
### NYCHRL - GENDER DISCRIMINATION

137.     Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation

contained in paragraphs 1 through 108 inclusive, with the same force and effect as though more

fully set forth at length herein.

138.     The aforesaid discriminatory acts by Defendants **FXCM**, its officers, directors,

supervisors, managers and/or employees, perpetrated against Plaintiff **JENNIFER WEE** because

of her female gender violated Plaintiff **JENNIFER WEE**'s rights as provided under New York

City Human Rights Law Title 8 ("NYCHRL"), <u>et. seq.</u>

139.     As a consequence of the foregoing misconduct of Defendants **FXCM**, Plaintiff

**JENNIFER WEE** sustained conscious pain and suffering, great mental distress, and humiliation, and incurred economic loss.

140.    As a consequence of the foregoing misconduct of Defendants **FXCM,** Plaintiff **JENNIFER WEE** has been damaged and is entitled to compensatory damages and punitive damages in the sum prescribed by NYC Human Rights Law Title 8, et. seq., i.e., compensatory damages of TWENTY-FIVE MILLION ($25,000,000.00 ) DOLLARS and punitive damages of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS, as well as attorneys fees.


## AS AND FOR A FOURTH CAUSE OF ACTION
## TITLE VII - RACE DISCRIMINATION

141.    Plaintiff **JENNIFER WEE**  repeats and realleges each and every allegation contained in paragraphs 1 through 63 inclusive, with the same force and effect as though more fully set forth at length herein.

142.    The aforesaid acts of intentional race discrimination against Asians by Defendants **FXCM**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff **JENNIFER WEE**'s  rights as provided under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 of the United States Code, Section 2000e-2(a).

143.    As a consequence of Defendants' race discrimination against Asians while Plaintiff was an employee of Defendants **FXCM**, Plaintiff sustained conscious pain and suffering, great mental distress, physical injury, shock, fright and humiliation.  In addition, Plaintiff  incurred monetary loss as she was subjected to adverse employment actions, including disparate pay, culminating in her constructive termination.

144.    As a consequence of the foregoing misconduct of Defendants **FXCM**, Plaintiff

JENNIFER WEE has sustained damage in the sum of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS compensatory damages, THREE HUNDRED THOUSAND ($300,000.00) DOLLARS punitive damages, plus economic damages and attorneys fees.

## AS AND FOR A FIFTH CAUSE OF ACTION
## NYSHRL - RACE DISCRIMINATION

145.    Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation contained in paragraphs 1 through 63 inclusive, with the same force and effect as though more fully set forth at length herein.

146.    The aforesaid acts of intentional race discrimination against Asians by Defendant **FXCM**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff **JENNIFER WEE**'s rights as provided under New York State Human Rights Law - Executive Law Section 290 et. seq.

147.    As a consequence of Defendants' racial discrimination against Asians while Plaintiff was an employee of Defendants **FXCM**, Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation. In addition, Plaintiff incurred monetary loss as she was subjected to adverse employment actions, including disparate pay, culminating in her constructive termination.

148.    As a consequence of the foregoing misconduct of Defendants **FXCM**, Plaintiff **JENNIFER WEE** has been damaged in the sum of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS.

## AS AND FOR A SIXTH CAUSE OF ACTION
## NYCHRL - RACE DISCRIMINATION

149.    Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation contained in paragraphs 1 through 63 inclusive, with the same force and effect as though more fully set forth at length herein.

150.    The aforesaid discriminatory acts by Defendants **FXCM**, its officers, directors, supervisors, managers and/or employees, perpetrated against Plaintiff **JENNIFER WEE** because of her Asian race violated Plaintiff **JENNIFER WEE**'s rights as provided under New York City Human Rights Law Title 8 ("NYCHRL"), et. seq.

151.    As a consequence of the foregoing misconduct of Defendants **FXCM**, Plaintiff **JENNIFER WEE** sustained conscious pain and suffering, great mental distress, and humiliation, and incurred economic loss.

152.    As a consequence of the foregoing misconduct of Defendants **FXCM,** Plaintiff **JENNIFER WEE** has been damaged and is entitled to compensatory damages and punitive damages in the sum prescribed by NYC Human Rights Law Title 8, et. seq., i.e., compensatory damages of TWENTY-FIVE MILLION ($25,000,000.00 ) DOLLARS and punitive damages of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS, as well as attorneys fees.


## AS AND FOR A SEVENTH CAUSE OF ACTION
## TITLE VII - NATIONAL ORIGIN DISCRIMINATION

153.    Plaintiff **JENNIFER WEE**  repeats and realleges each and every allegation contained in paragraphs 1 through 63 inclusive, with the same force and effect as though more fully set forth at length herein.

154.    The aforesaid acts of intentional race discrimination against foreign-born

employees by Defendants **FXCM**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff **JENNIFER WEE**'s  rights as provided under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 of the United States Code, Section 2000e-2(a).

155.    As a consequence of Defendants' national origin discrimination against employees born outside the United States while Plaintiff was an employee of Defendants **FXCM**, Plaintiff sustained conscious pain and suffering, great mental distress, physical injury, shock, fright and humiliation.  In addition, Plaintiff incurred monetary loss as she was subjected to adverse employment actions, including disparate pay, culminating in her constructive termination.

156.    As a consequence of the foregoing misconduct of Defendants **FXCM**, Plaintiff **JENNIFER WEE** has sustained damage in the sum of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS compensatory damages, THREE HUNDRED THOUSAND ($300,000.00) DOLLARS punitive damages plus economic damages and attorneys fees.


## AS AND FOR AN EIGHTH CAUSE OF ACTION
## NYSHRL - NATIONAL ORIGIN DISCRIMINATION

157.    Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation contained in paragraphs 1 through 63 inclusive, with the same force and effect as though more fully set forth at length herein.

158.    The aforesaid acts of intentional national origin discrimination against foreign-born employees by Defendants **FXCM**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff **JENNIFER WEE**'s rights as provided under New York State Human Rights Law - Executive Law Section 290 et. seq.

159.    As a consequence of Defendants' national origin discrimination against employees

born outside the United States while Plaintiff was an employee of Defendants **FXCM**, Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation.  In addition, Plaintiff incurred monetary loss as she was subjected to adverse employment actions, including disparate pay, culminating in her constructive termination.

160.    As a consequence of the foregoing misconduct of Defendants **FXCM**, Plaintiff **JENNIFER WEE** has been damaged  in the sum of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS.

### AS AND FOR A NINTH CAUSE OF ACTION
### NYCHRL - NATIONAL ORIGIN DISCRIMINATION

161.    Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation contained in paragraphs 1 through 63 inclusive, with the same force and effect as though more fully set forth at length herein.

162.    The aforesaid discriminatory acts by Defendants **FXCM**, its officers, directors, supervisors, managers and/or employees, perpetrated against Plaintiff **JENNIFER WEE** because she was born outside the United States violated Plaintiff **JENNIFER WEE**'s rights as provided under New York City Human Rights Law Title 8 ("NYCHRL"), et. seq.

163.    As a consequence of the foregoing misconduct of Defendants **FXCM**, Plaintiff **JENNIFER WEE** sustained conscious pain and suffering, great mental distress, and humiliation, and incurred economic loss.

164.    As a consequence of the foregoing misconduct of Defendants **FXCM,** Plaintiff **JENNIFER WEE** has been damaged and is entitled to compensatory damages and punitive damages in the sum prescribed by NYC Human Rights Law Title 8, et. seq., i.e., compensatory

damages of TWENTY-FIVE MILLION ($25,000,000.00 ) DOLLARS and punitive damages of

TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS, as well as attorneys fees.

## AS AND FOR A TENTH CAUSE OF ACTION
## TITLE VII - SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

165.    Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation

contained in paragraphs 1 through 125 inclusive, with the same force and effect as though more

fully set forth at length herein.

166.    The aforesaid acts of intentional sexual harassment, including the hostile work

environment for women, perpetrated by Defendants **FXCM**, its officers, directors, supervisors,

managers, and/or employees, and the aforesaid acts of retaliation by Defendants **FXCM** for

Plaintiff's failure to comply with sexual advances and sexually inappropriate conduct, violated

Plaintiff **JENNIFER WEE**'s rights as provided under Title VII of the United States Civil Rights

Act of 1964, as amended, Title 42 of the United States Code, Section 2000e-2(a).

167.    As a consequence of Defendants' sexual harassment, the sexually hostile work

environment, and the retaliation against Plaintiff for refusing to succumb to her supervisor's

sexual advances, while Plaintiff was an employee of Defendants **FXCM**, Plaintiff sustained

conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation.

In addition, Plaintiff incurred monetary loss as she was subjected to adverse employment actions,

including disparate pay, culminating in her constructive termination.

168.    As a consequence of the foregoing misconduct of Defendants **FXCM**,  Plaintiff

**JENNIFER WEE** has sustained damage in the sum of THREE HUNDRED THOUSAND

($300,000.00) DOLLARS compensatory damages, THREE HUNDRED THOUSAND

($300,000.00) DOLLARS punitive damages, plus economic damages and attorneys fees.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## NYSHRL - SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

169.    Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation

contained in paragraphs 1 through 125 inclusive, with the same force and effect as though more

fully set forth at length herein.

170.    The aforesaid acts of intentional sexual harassment, including a hostile work

environment for women, by Defendants **FXCM**, its officers, directors, supervisors, managers

and/or employees, and the aforesaid acts of retaliation by Defendants for Plaintiff's refusal to

comply with sexual advances and inappropriate sexual conduct, violated Plaintiff **JENNIFER**

**WEE**'s rights as provided under New York State Human Rights Law - Executive Law Section 290

et. seq.

171.    As a consequence of Defendants **FXCM**'s sexual harassment, its sexually hostile

work environment, and the retaliation against Plaintiff for refusing to succumb to her supervisor's

sexual advances, while Plaintiff was an employee of Defendants **FXCM**, Plaintiff sustained

conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation.

In addition, Plaintiff incurred monetary loss as she was subjected to adverse employment actions,

including disparate pay, culminating in her constructive termination.

172.    As a consequence of the foregoing misconduct of **Defendants FXCM**, Plaintiff

**JENNIFER WEE** has been damaged in the sum of TWENTY-FIVE MILLION

($25,000,000.00) DOLLARS.

## AS AND FOR A TWELFTH CAUSE OF ACTION
## NYCHRL - SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

173.    Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation contained in paragraphs 1 through 125 inclusive, with the same force and effect as though more fully set forth at length herein.

174.    The aforesaid discriminatory acts by Defendants **FXCM**, its officers, directors, supervisors, managers and/or employees, perpetrated against Plaintiff **JENNIFER WEE** because she was born outside the United States violated Plaintiff **JENNIFER WEE**'s rights as provided under New York City Human Rights Law Title 8 ("NYCHRL"), et. seq.

175.    As a consequence of the foregoing misconduct of Defendants **FXCM**, Plaintiff **JENNIFER WEE** sustained conscious pain and suffering, great mental distress, and humiliation, and incurred economic loss.

176.    As a consequence of the foregoing misconduct of Defendants **FXCM,** Plaintiff **JENNIFER WEE** has been damaged and is entitled to compensatory damages and punitive damages in the sum prescribed by NYC Human Rights Law Title 8, et. seq., i.e., compensatory damages of TWENTY-FIVE MILLION ($25,000,000.00 ) DOLLARS and punitive damages of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS, as well as attorneys fees.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
## TITLE VII - RETALIATION

177.    Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation contained in paragraphs 1 through 129 inclusive, with the same force and effect as though more fully set forth at length herein.

178.    The aforesaid acts of intentional retaliation by Defendants **FXCM**, its officers,

directors, supervisors, managers and/or employees, violated Plaintiff **JENNIFER WEE**'s rights as provided under Title VII of the United States Civil Rights Act of 1964, as amended, Title 42 of the United States Code, Section 2000e-2(a).

179.    As a consequence of Defendants' retaliation against Plaintiff during her employment at Defendants **FXCM**, Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation, and incurred monetary loss and various adverse employment actions, including but not limited to lack of promotion, disparate pay, an increased workload, unfair disciplinary action, and ultimately constructive termination.

180.    As a consequence of the foregoing misconduct of Defendants **FXCM**, Plaintiff **JENNIFER WEE** has sustained damage in the sum of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS compensatory damages, THREE HUNDRED THOUSAND ($300,000.00) DOLLARS punitive damages, plus economic damages and attorneys fees.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
## NYSHRL - RETALIATION

181.    Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation contained in paragraphs 1 through 129 inclusive, with the same force and effect as though more fully set forth at length herein.

182.    The aforesaid acts of intentional retaliation against Plaintiff by Defendants **FXCM**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff **JENNIFER WEE**'s rights as provided under New York State Human Rights Law - Executive Law Section 290 et. seq.

183.    As a consequence of Defendants' retaliation against Plaintiff while she was an

employee of Defendants **FXCM**, Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation, and incurred monetary loss, and was subjected to other adverse employment actions, including but not limited to lack of promotion, disparate pay, increased workload, unfair disciplinary actions, and ultimately her constructive termination.

184.    As a consequence of the foregoing misconduct of Defendants **FXCM**,  Plaintiff **JENNIFER WEE** has been damaged  in the sum of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
## NYCHRL -RETALIATION

185.    Plaintiff **JENNIFER WEE** repeats and realleges each and every allegation contained in paragraphs 1 through 129 inclusive, with the same force and effect as though more fully set forth at length herein.

186.    The aforesaid intentional retaliation by Defendants **FXCM**, its officers, directors, supervisors, managers and/or employees, perpetrated against Plaintiff **JENNIFER WEE** because she was born outside the United States violated Plaintiff **JENNIFER WEE**'s rights as provided under New York City Human Rights Law Title 8 ("NYCHRL"), et. seq.

187.    As a consequence of the foregoing misconduct of Defendants **FXCM**, Plaintiff **JENNIFER WEE** sustained conscious pain and suffering, great mental distress, and humiliation, and incurred economic loss.

188.    As a consequence of the foregoing misconduct of Defendants **FXCM,** Plaintiff **JENNIFER WEE** has been damaged and is entitled to compensatory damages and punitive

damages in the sum prescribed by NYC Human Rights Law Title 8, et. seq., i.e., compensatory damages of TWENTY-FIVE MILLION ($25,000,000.00 ) DOLLARS and punitive damages of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS, as well as attorneys fees.

WHEREFORE, Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the First Cause of Action in the amount of SIX HUNDRED THOUSAND ($600,000.00) DOLLARS; Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Second Cause of Action in the amount of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS; Plaintiff **JENNIFER WEE** demands judgment against Defendant **FXCM** in the Third Cause of Action in the amount of FIFTY MILLION ($50,000,000.00) DOLLARS; Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Fourth Cause of Action in the amount of SIX HUNDRED THOUSAND ($600,000.00); Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Fifth Cause of Action in the amount of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS; Plaintiff **JENNIFER WEE** demands judgment against Defendant **FXCM** in the Sixth Cause of Action in the amount of FIFTY MILLION ($50,000,000.00) DOLLARS; Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Seventh Cause of Action in the amount of SIX HUNDRED THOUSAND DOLLARS ($600,000.00); Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Eighth Cause of Action in the amount of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS; Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Ninth Cause of Action in the amount of FIFTY MILLION DOLLARS ($50,000,000.00); Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Tenth Cause of Action in the amount of SIX HUNDRED THOUSAND

($600,000.00) DOLLARS; Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Eleventh Cause of Action in the amount of TWENTY-FIVE MILLION ($25,000,000.00) DOLLARS; Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Twelfth Cause of Action in the amount of FIFTY MILLION DOLLARS ($50,000,000.00); Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Thirteenth Cause of Action in the amount of SIX HUNDRED THOUSAND ($600,000.00) DOLLARS; Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Fourteenth Cause of Action in the amount of TWENTY-FIVE MILLION DOLLARS ($25,000,000.00); and Plaintiff **JENNIFER WEE** demands judgment against Defendants **FXCM** in the Fifteenth Cause of Action in the amount of FIFTY MILLION ($50,000,000.00) DOLLARS; all together with the costs and disbursements of this action, including attorneys fees, plus interest, and for any other relief which this Court deems just and proper.

Dated:      New York, New York
            August 24, 2005

                        MORELLI RATNER PC


                        By: _____
                            MARTHA M. McBRAYER, ESQ. (MM-7097)
                            950 Third Avenue, 11th Floor
                            New York, New York 10022
                            (212) 751-9800